IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| ROBERT K. GARVEY, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 09-788-SLR |
|  | ) |  |
| PERRY PHELPS, Warden, | ) |  |
| and JOSEPH R. BIDEN, III, | ) |  |
| Attorney General of the State | ) |  |
| of Delaware, | ) |  |
|  | ) |  |
| Respondents. | ) |  |

Robert K. Garvey. Pro se petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

January 6, 2012
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Petitioner Robert K. Garvey ("petitioner") is a Delaware inmate in custody at the James T. Vaughn Correctional Center in Smyrna, Delaware. Presently before the court is petitioner's amended application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 28) For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

On the afternoon of July 14, 2001, Turquoise Williams and Benjamin Finnell traveled to a Wilmington shopping center looking for clothes to wear to Philadelphia's annual Greek Festival. While there, they met two women, Rebecca King and Tracey Vanderworker. The four spoke and agreed to meet later that night. King and Vanderworker then left and approached petitioner and two others, Donial Fayson and Leonard Manlove. In search of money, the five agreed to rob Williams and Finnell later that night. According to their plan, the two women would lead Williams and Finnell to a Wilmington apartment complex, where petitioner would be waiting to rob them.

In the early morning hours of July 15, 2001, petitioner, armed with a handgun, traveled to the apartment building. Meanwhile, King and Vanderworker picked up Williams, Finnell, and Donald Jordan, and drove them to the apartment complex. When they arrived, however, the three men were reluctant to leave the vehicle. Eventually, King and Vanderworker persuaded them to go inside the apartment building. Once they got out of the car, petitioner approached Williams. Williams resisted, and petitioner fired a shot. Although the shot missed Williams, it struck and killed Jordan.

---

[1]The factual background is quoted directly from *Garvey v. State*, 873 A.2d 291, 294 (Del. 2005).

Wilmington police arrested petitioner on July 15, 2001. A New Castle County grand jury indicted him on the following charges: first degree murder ("felony murder"); two counts of possession of a firearm during the commission of a felony ("PFDCF"); first degree robbery; attempted first degree robbery; second degree conspiracy; and two counts of carrying a concealed deadly weapon. In January 2002, petitioner filed a motion to suppress post-arrest statements that he made to the police. The Superior Court held an evidentiary hearing on the suppression motion in June 2002, and denied it in September 2002. Following a fifteen-day trial, a Superior Court jury convicted petitioner of all charges. After a three-day penalty hearing, the jury unanimously found that the State had proven the existence of a statutory aggravating circumstance rendering petitioner eligible for the death penalty, but recommended a sentence of life in prison by a vote of nine to three. On December 17, 2003, the Superior Court sentenced petitioner to life plus thirty years in prison. The Delaware Supreme Court affirmed petitioner's convictions and sentence. *See generally Garvey*, 873 A.2d 291.

Petitioner filed his first motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") in September 2005, alleging ineffective assistance of counsel. *See State v. Garvey*, 2006 WL 1495786 (Del. Super. May 25, 2006). The Superior Court denied the motion as meritless, and the Delaware Supreme Court affirmed that judgment. *Id*; *Garvey v. State*, 925 A.2d 503 (Table), 2007 WL 1221136 (Del. Apr. 26, 2007). Petitioner then filed two more Rule 61 motions, one in August 2007 and the other in February 2009, both of which were denied by the Superior Court as procedurally barred. *See State v. Garvey*, 2008 WL 1952159 (Del. Super. Feb. 13, 2008); *State v. Garvey*, 2009 WL 1037740 (Del. Super. Apr. 8, 2009).

The Delaware Supreme Court affirmed those judgments. *See Garvey v. State*, 962 A.2d 917 (Table), 2008 WL 4809435 (Del. Nov. 5, 2008); *Garvey v. State*, 979 A.2d 1110 (Table), 2009 WL 2882873 (Del. Sept. 10, 2009).

Petitioner timely filed a § 2254 application (D.I. 2) in this court. After numerous extensions of time, petitioner filed an amended application (D.I. 28) in March 2011. The State filed an answer (D.I. 35), arguing that the application should be denied in its entirety as procedurally barred. Petitioner filed a reply (D.I. 40) and then a motion for leave to file a supplement to his amended application which contained the supplement (D.I. 42); in his supplement, petitioner argued that his application should not be denied as procedurally barred because he is "actually innocent."

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S.

3

346, 351 (1989); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); see *Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are nonetheless procedurally defaulted. *Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at

4

496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - -whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## IV. DISCUSSION

The amended application presents the following two grounds for relief: (1) petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated because he was not personally present during the *voir dire* of fifteen prospective jurors; and (2) petitioner's conviction for first degree felony murder violates his due process rights under Fifth and Fourteenth Amendments because (a) there is insufficient evidence to support the conclusion that petitioner's "criminally negligent" killing was committed "in furtherance of" his first degree robbery offense, and (b) he is actually innocent of criminally negligent first degree felony murder under 11 Del. C. § 636(a)(6) (2003), because the Delaware General Assembly repealed former § 636(a)(6) in 2004 and "reclassified [the offense] down" to second degree murder. Although petitioner raised both of these claims in his second Rule 61 motion, and then to the Delaware Supreme Court on post-conviction appeal, the Delaware Courts denied the claims as procedurally

5

barred under Rule 61(i)(2) due to petitioner's failure to raise the issues in his first Rule 61 motion, and as procedurally defaulted under Rule 61(i)(3) due to petitioner's failure to raise the issues on direct appeal. By applying the procedural bar of Rules 61(i)(2) and (3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984), that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of claims one and two absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner does not allege, and the court cannot discern, any cause for his failure to raise these claims prior to his second Rule 61 motion. In the absence of cause, the court will not address the issue of prejudice.

Moreover, the court concludes that petitioner's default of claims one and two cannot be excused under the miscarriage of justice exception to the procedural default doctrine because petitioner has not provided "new reliable" evidence that can establish his actual innocence. And, for the reasons set forth below, petitioner's argument that the repeal of former § 636(a)(6) in 2004 somehow demonstrates his "actual innocence" of first degree felony murder also does not trigger the miscarriage of justice exception because the argument lacks merit.

Petitioner was convicted on October 14, 2003 of first degree felony murder under then-existing § 636(a)(6) for criminally negligently killing another person during the

6

commission or attempted commission of, *inter alia*, first degree robbery. Pursuant to former § 636(a)(6), a person was guilty of first degree murder when he, "with criminal negligence, cause[d] the death of another person in the course of and in furtherance of the commission or attempted commission of [] robbery in the first degree []." 11 Del. C. § 636(a)(6) (2003). Pursuant to former § 635(2), a person was guilty of second degree felony murder when, "[i]n the course of and in furtherance of the commission or attempted commission of any felony not specifically enumerated in § 636 of this title or immediate flight therefrom, the person, with criminal intent, cause[d] the death of another person." 11 Del. C. § 635(2) (2003).

While petitioner's direct appeal was still pending before the Delaware Supreme Court, the Delaware General Assembly amended § 636 by substituting new language for the phrase "in the course of and in furtherance of" a felony in former § 636(a)(2); deleting former § 636(a)(6) in its entirety; and re-designating former § 636(a)(7) as (a)(6). *See* 11 Del. Code Ann. § 636 n.3 "Effects of Amendments" (2011). The Delaware General Assembly also amended 11 Del. C. § 635 (a) (second degree murder) by completely striking the former language of paragraph § 635(a)(2), "In the course of an in furtherance of the commission or attempted commission of any felony not specifically enumerated in § 636 of this title or immediate flight therefrom," and substituting it with "While engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any felony." *See* 11 Del. Code Ann. § 635 "Effects of Amendments" (2003). These amendments became effective on May 19,

7

2004,[2] almost one full year before petitioner's convictions and sentences became final. See 74 Del. Laws, c. 246 (2004).

At common law, the repeal of a criminal statute abated a prosecution that had not reached final disposition in the highest court authorized to review the conviction and sentence.[3] However, under the general savings statute of the Delaware criminal code, an amendment to, or repeal of, a criminal statute does not terminate a prosecution, regardless of the stage of the case, unless the amending or repealing act expressly provides that result.[4] See 11 Del. C. § 211 (2011). Thus, even though petitioner's

---

[2]Thus, § 636(a)(6) now provides that a person is guilty of first degree murder when he "causes the death of another person in order to avoid or prevent the lawful arrest of any person, or in the course of and in furtherance of the commission or attempted commission of escape in the second degree or escape after conviction." 11 Del. C. § 636(a)(6) (2011).

[3]See Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 660 (1974).

[4]Delaware's general savings statute, which is modeled after the Federal savings statute, provides that:

> (a) The repeal of any statute creating, defining or relating to any criminal offenses set forth under the laws of this State, shall not have the effect of releasing or extinguishing any penalty, forfeiture or liability incurred under such statute, **unless the repealing act shall so expressly provide**, and such statute shall be treated as remaining in full force and effect for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.
>
> (b) Any action, case, prosecution, trial or other legal proceeding in progress under or pursuant to any statute relating to any criminal offense set forth under the laws of this State shall be preserved and shall not become illegal or terminated in the event that such statute is later amended by the General Assembly, irrespective of the stage of such proceeding, **unless the amending act expressly provides to the contrary**. For the purposes of such proceedings, the prior law shall remain in full force and effect.

11 Del. C. § 211 (2011) (emphasis added). Delaware's general savings statute is a

8

conviction for criminally negligent felony murder did not become final until after the effective date of the repeal/amendment of former § 636(a)(6), that repeal/amendment did not invalidate petitioner's conviction for criminally negligent felony murder.

Petitioner attempts to make an end-run around this result by arguing that *Chao v. State*, 604 A.2d 1351 (Del. 1992) ("*Chao I*"),[5] *Chao v. State*, 931 A.2d 1000 (Del. 2007) ("*Chao II*"), and *Williams v. State*, 818 A.2d 906 (Del. 2002), somehow made the 2004 amendment/repeal of former § 636(a)(6) retroactively applicable to his conviction, thereby rendering him "actually innocent" of criminally negligent first degree felony murder. A brief historical summary is necessary to better understand this creative argument.

In its 1992 *Chao I* decision, the Delaware Supreme Court affirmed defendant Vicky Chao's convictions for, *inter alia*, three counts of first degree intentional murder under § 636(a)(1) and three counts of first degree reckless felony murder under § 636(a)(2). *Chao I*, 604 A.2d at 1363. One of the issues in *Chao I* involved the sufficiency of the evidence in the context of a reckless felony murder prosecution under § 636(a)(2) and the requirement that the killing be in the furtherance of the felony. Chao contended that there was insufficient evidence to establish her guilt of reckless felony murder beyond a reasonable doubt because the evidence indicated that she intended to kill the victims by setting their house on fire and, therefore, no rational juror

---

"positive rule of law," and is "incorporated in legislation whenever the General Assembly does not intend differently." *State v. Ishmaaeel*, 840 A.2d 644, 651 (Del. Super. 2004), aff'd, 854 A.2d 1158 (Del. 2004).

[5]*Overruled by Williams v. State*, 818 A.2d 906 (Del. 2002).

could infer that the killings were caused "in furtherance of the commission" of arson, a felony. *Id.* at 1362-63. The *Chao I* Court rejected Chao's argument after analyzing the internal structure of § 635 and § 636 and the effect of including the "in furtherance of" language in § 636(a)(6) and § 635(2),[6] both of which imposed murder liability in the context of criminal negligence. According to *Chao I*,

> for felony murder liability to attach, a killing need only accompany the commission of an underlying felony. Thus, if the "in furtherance" language has any limiting effect, it is solely to require that the killing be done by the felon, him or herself.

*Id.* at 1363. When analyzing the reason for including the "in furtherance of" language in § 636(a)(6), the *Chao I* Court stated that "a person can either cause another's death out of criminal negligence or in furtherance of a felony, but not both simultaneously."[7] *Id.*

In 2002, the Delaware Supreme Court overruled *Chao I* when it clarified that the phrase "in furtherance of" contained in § 636(a)(2) requires that the defendant or his accomplices commit the murder in the course of a felony and that the defendant or his accomplices intended the murder to help the felony progress. *Williams*, 818 A.2d at 913.

---

[6]Pursuant to the version of § 635(a)(2) discussed in *Chao I*, a person was guilty of second degree murder when, "in the course of and in furtherance of the commission or attempted commission of any felony not specifically enumerated in § 636 of this title or immediate flight therefrom he, with criminal negligence, cause[d] the death of another person." *See* 11 Del. C. § 636(a)(2) (1988).

[7]In February 1995, the Superior Court granted Chao's motion for a new trial. Following the new trial, a Delaware Superior Court jury convicted Chao of three counts of felony murder, first degree arson, and second degree conspiracy, but acquitted her of intentional murder, attempted murder, and first degree conspiracy. Those convictions were affirmed on appeal. *See Chao v. State*, 707 A.2d 765 (Table), 1998 WL 112527 (Del. Jan. 23, 1998), *supplemented by* 780 A.2d 1060 (Del. 2001).

In 2004, Chao filed a new Rule 61 motion arguing that her three felony murder convictions had to be reviewed in light of *Williams*. *See Chao II*, 931 A.2d 1000. Although the Superior Court summarily denied the motion, the Delaware Supreme Court reversed that decision in *Chao II* and held that *Williams'* clarification of the "in furtherance of" language in § 636(a)(2) applied retroactively. *Id.* at 1002. Consequently, the *Chao II* Court vacated Chao's felony murder convictions under § 636(a)(2) because Chao's conduct did not constitute the crime of felony murder under *Williams* and remanded the case to the Superior Court to determine if Chao should be re-sentenced on the lesser-included charges of manslaughter. *Id.* at 1003. The *Chao II* Court also asked the State to provide a complete list of all inmates who **might** be affected by the retroactive application of *Williams*; this petitioner's name was on that list.

In this proceeding, petitioner contends that *Chao II*'s retroactive application of *Willams'* redefinition of the "in furtherance" phrase contained in § 636(a)(2) resurrected the Delaware Supreme Court's statement in *Chao I* that "a person can either cause another's death out of criminal negligence or in furtherance of a felony, but not both simultaneously." According to petitioner, the above-quoted language from *Chao I* was the impetus for the Delaware General Assembly's 2004 "decriminalization" of the first degree "criminal negligence" felony murder statute (§ 636(a)(6)). Petitioner appears to contend that *Chao II* somehow demonstrates that the Delaware General Assembly's repeal of former § 636(a)(6) in 2004 "relates back" to the 1992 *Chao I* decision and essentially erases from existence the former offense known as criminally negligent felony murder. Thus, according to petitioner's logic, his conviction for criminally

11

negligent felony murder under § 636(a)(6) must be vacated because no such crime existed in 2003.

While the court acknowledges the creativity of this argument, petitioner cannot overcome the barrier erected by Delaware's savings statute and the fact that the Delaware General Assembly did not expressly provide that the 2004 amendment/repeal of § 636(a)(6) applies retroactively.[5] Petitioner's reliance on *Davis v. United States*, 417 U.S. 333 (1974), and *Fiore v. White*, 531 U.S. 225, 229 (2001), does not alter the court's conclusion because the decisions are inapposite; both *Davis* and *Fiore* involved a court's subsequent interpretation of the criminal statute under which the defendant was convicted rather than a legislature's subsequent repeal or amendment of the statute under which the defendant was convicted.[6]

---

[5]For this same reason, the court also rejects petitioner's implicit argument that he can only be convicted of second degree murder under § 635(2) because the 2004 amendment of former § 635(2) to include "any felony" rather than those felonies specifically enumerated in § 636(a)(6) applies retroactively to his case.

[6]In *Davis*, the movant asserted that his sentence should be vacated, set aside, or modified pursuant to 28 U.S.C. § 2255 as a result of the Ninth Circuit's reinterpretation of the federal statute under which he was convicted after the affirmance of his conviction. *Id.* at 346. The issue in *Davis*, however, involved the extent to which the law-of-the-case doctrine barred review under 28 U.S.C. § 2255 due to the fact that the movant's contentions were previously rejected on direct appeal. *Id.* The *Davis* Court expressed no view on the merits of the movant's argument; rather, it merely held that the movant's argument was cognizable on § 2255 review and that the law-of-the-case doctrine did not prevent the federal district court from revisiting the argument in a § 2255 proceeding. *Id.* at 347.

*Fiore* addressed the distinction between a court's clarification of a state statute and a court's announcement of a change in the state statute after the defendant's conviction under that law becomes final, and the due process implications arising from such a distinction. *See Fiore*, 531 U.S. at 229. Specifically, the *Fiore* Court held that a state court's decision clarifying the plain language and meaning of the statute as it existed at the time of the defendant's prosecution presents an issue of federal due process rather than one of retroactivity, whereas a state court's announcement of a

12

For all of these reasons, the court concludes that petitioner has not demonstrated that he is actually innocent of criminally negligent felony murder, thereby defeating his attempt to trigger the miscarriage of justice exception to the procedural default doctrine. Accordingly, the court will deny both of petitioner's claims as procedurally barred.

## V. MOTION FOR LEAVE TO SUPPLEMENT

During the pendency of this proceeding, petitioner filed a motion for leave to file a supplement to the application. (D.I. 42) Given the fact that petitioner attached the proposed supplement to his motion, the court will deny the motion to supplement as moot. The court notes that it considered the arguments contained in said supplement during its review of the instant application.

## VI. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas application on procedural grounds

---

change of law raises retroactivity issues. *Id.* at 228. Consequently, if a court's subsequent clarification of the criminal statute demonstrates that the statute did not prohibit the defendant's conduct, then his conviction would violate due process because he is actually innocent of the crime. *Id.* at 228-29.

13

without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VII. CONCLUSION

For foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254. An appropriate order will be entered.